UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN P. MCENERY,<br><br>  Plaintiff,<br><br>v.<br><br>TOM MCENERY, et al.,<br><br>  Defendants. | Case No. 21-cv-09614-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND STAYING CASE**<br><br>Re: Dkt. No. 21 |

Pending before the Court is the motion to dismiss filed by Defendants Tom McEnery, Martin Menne, and MCM Diversified, Inc. Dkt. No. 21. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

## I. BACKGROUND

Plaintiff John McEnery filed this action in December 2021, asserting a single cause of action for intentional interference with prospective economic relations. *See* Dkt. No. 1 ("Compl.") at ¶¶ 18–26. The facts are heavily disputed, although the parties appear to agree that Plaintiff and Defendants have equal ownership over the San Pedro Square Market in San Jose (the "Market"). *See id.* at ¶ 3; *see also* Dkt. No. 21 at 3–4. They own and run the Market through two entities, Urban Markets, LLC ("UM") and Urban Markets Entertainment, LLC ("UME") (collectively, "the LLCs"). *Id.*

Plaintiff alleges that during the COVID-19 pandemic, the Market was no longer profitable. *See id.* at ¶ 5. Plaintiff therefore began to consider selling some or all of his interests in UM and UME. *See id.* at ¶¶ 5–6. He spoke with his cousin, Oliver Herning, about a potential sale. *Id.*

But Plaintiff alleges that after learning of the negotiations, Defendants dissuaded Mr. Herning from buying Plaintiff's interests in UM and UME. *See id.* at ¶¶ 6–10. According to Plaintiff, Defendant Tom McEnery told Mr. Herning that his negotiations with Plaintiff "were premised on an oversized valuation of the LLCs." *Id.* at ¶ 9. Defendant Tom McEnery also "bashed" and "disparaged" Plaintiff's morals and character in order to deter Mr. Herning from his negotiations with Plaintiff. *Id.* Plaintiff further alleges that Defendant Tom McEnery offered Mr. Herning "an alternative investment opportunity in one of Tom's other projects." *Id.* And as a result, Plaintiff alleges, Mr. Herning "ended up walking away from negotiations," which deprived Plaintiff "of a viable business partner . . . ." *Id.* at ¶ 10.

## II. DISCUSSION

Defendants argue that this case is not properly before the Court because the operating agreements for the two LLCs contain arbitration provisions. *See* Dkt. No. 21; Dkt. No. 21-2, Ex. A; Dkt. No. 21-3, Ex. B. They urge the Court to dismiss the case entirely or stay the action pending arbitration. *See* Dkt. No. 21 at 7–15. Defendants also argue that the Court should strike sections of the complaint under Federal Rule of Civil Procedure 12(f). *See id.* at 15–16.

### A. Motion to Compel Arbitration

Defendants style their motion as a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), (3), and (6). *See generally* Dkt. No. 21. As an initial matter, the parties appear to dispute whether a motion to dismiss is the appropriate procedural mechanism to raise the existence and enforcement of the arbitration agreement. *Compare* Dkt. No. 22 at 9–14, *with* Dkt. No. 28 at 2–7. Plaintiff urges that arbitration agreements do not divest federal courts of jurisdiction under Rule 12(b)(1) or render federal court an improper venue under Rule 12(b)(3). *See* Dkt. No. 22 at 10–11. Plaintiff also suggests that because he did not explicitly reference the arbitration agreement in the complaint, the Court cannot consider the arbitration agreement under Rule 12(b)(6). *See id.* at 11–12. The Court declines Plaintiff's invitation to elevate form over substance in considering Defendants' motion.

Regardless of the name of the motion, Defendants have made clear that they believe the parties have entered into valid arbitration agreements; the parties are already arbitrating

overlapping claims; and the single cause of action in this case for intentional interference falls within the scope of the arbitration agreements. *See* Dkt. No. 21 at 3, 7–8; Dkt. No. 28 at 3–4, & n.1. Any party bound to an arbitration agreement that falls within the scope of the Federal Arbitration Act, Title 9 U.S.C. §§ 1, *et. seq.*, may bring a motion to compel arbitration and stay the proceeding pending resolution of the arbitration. *See* 9 U.S.C. §§ 3–4. The name of the motion is not dispositive, and the Court accordingly construes Defendants' motion as one to compel arbitration. *See, e.g.*, *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009) (affirming motion to compel arbitration under Rule 12(b)(3)); *Epic Advert. v. Asis Internet Servs.*, No. 11-1705 SC, 2011 WL 6182180, at *1 (N.D. Cal. Dec. 13, 2011) (construing motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) as motion to compel arbitration) (collecting cases); *Serv. Emps. Int'l Union v. Connex-ATC*, No. C-06-3757 MMC, 2006 WL 2975591, at *2 (N.D. Cal. Oct. 18, 2006) (same).

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).

      **i.    Existence of Agreement to Arbitrate**

Here, Plaintiff acknowledges the existence of the arbitration agreements. *See* Dkt. No. 22 at 8 ("[T]he parties' UM and UME operating agreements do contain arbitration provisions."); *see also* Compl. at ¶¶ 7, 9 (citing the language of the operating agreements and challenging Defendants' proffered interpretations). Rather than challenge their validity, he acknowledges that the parties are currently arbitrating claims related to the LLCs pursuant to these agreements, including Plaintiff's own claims for breach of contract, breach of the covenant of good faith and

3

fair dealing, breach of fiduciary duty, and fraud. *See* Dkt. No. 22 at 18 ("In the arbitration, plaintiff sought to vindicate rights arising out of the UM and UME operating agreements."); *see also* Dkt. No. 21-5, Ex. D.  Much like this case, Plaintiff asserts in the arbitration that Defendants interfered with Plaintiff's discussions with a third party to buy his interests in the LLCs. *See* Dkt. No. 21-5, Ex. D at ¶¶ 1–5, 9; *see also id.* at Counter-Claims ¶¶ 16–32.  Plaintiff nevertheless argues that the arbitration agreements do not cover his intentional interference claim in this case. *See* Dkt. No. 22 at 14–18.  He argues that this claim "does not arise from the UM and UME operating agreements," or require their interpretation. *Id.*  In short, Plaintiff challenges the scope of the arbitration agreements.

Under the arbitration agreements:

> Any action to enforce or interpret this Agreement, or to resolve disputes with respect to this Agreement as between the Company and a Member, or between or among the Members, shall be settled by arbitration in accordance with the rules of the American Arbitration Association [("AAA")].  Arbitration shall be the exclusive dispute resolution process in the State of California . . . .

*See, e.g.*, Dkt. No. 21-2, Ex. A at 21; *see also* Dkt. No. 21-3, Ex. B at 22 (same).

Plaintiff asserts that his intentional interference claim is not a "dispute[] with respect to" the UM and UME operating agreements, and therefore is not encompassed by the arbitration agreements. *See* Dkt. No. 22 at 16.  Defendants respond that Plaintiff's claim of intentional interference depends on the nature of his right to sell his interests in the LLCs. *See* Dkt. No. 28 at 4.  And his rights—and any limitations—are dictated by the operating agreements. *Id.* Defendants point out that Plaintiff's own complaint cites the language of the operating agreements in support of his claim. *See* Compl. at ¶ 7 ("Under the UM and UME operating agreements, if [Plaintiff] found a bona fide purchaser who was ready, willing and able to consummate a purchase of all of [Plaintiff's] interest in the LLCs, [Defendants] might have a right of first refusal . . . .  If [Plaintiff] were only to sell a portion . . . no such rights would be triggered.") (emphasis omitted).

### ii. Delegation of Arbitrability

Before the Court may consider the scope of the arbitration agreements, however, the Court must determine whether it has authority to do so.

4

Parties to an arbitration agreement "can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "[W]hether the court or the arbitrator decides arbitrability is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir. 2013) (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). Therefore, courts "apply a more rigorous standard" to gateway questions of arbitrability. *See Momot v. Mastro*, 652 F.3d 982, 987–88 (9th Cir. 2011). "[C]lear and unmistakable 'evidence' of agreement to arbitrate arbitrability might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so." *Id.* at 988. The Supreme Court has clarified:

> When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless.

*Henry Schein*, 139 S. Ct. at 529.

As noted above, the arbitration agreements at issue in this case state that "action[s] to . . . interpret this Agreement, or to resolve disputes with respect to this Agreement . . . shall be settled by arbitration." *See, e.g.*, Dkt. No. 21-2, Ex. A at 21. This suggests that questions regarding the interpretation of the agreements should be decided by an arbitrator.

Even if this language was not clear enough on its own to delegate issues of arbitrability, the agreements also state that the arbitration is governed by the rules of the AAA. *Id.* The AAA Commercial Arbitration Rules, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, *scope*, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." *See*

5

1    AAA Commercial Arbitration Rules and Mediation Procedures R-7(a) (emphasis added).[1]  "The

2    Ninth Circuit has explicitly held that incorporation of the AAA rules can constitute clear and

3    unmistakable delegation of the arbitrability question."  *Brennan*, 796 F.3d at 1130.[2]  The Court

4    therefore finds that the parties' arbitration agreement expressly delegates questions of the

5    arbitrability of any dispute to the arbitrator.  *See Rent-A-Center*, 561 U.S. at 72 ("[U]nless

6    [Plaintiff] challenge[s] the delegation provision specifically, [the Court] must treat it as valid

7    under § 2 [of the FAA], and must enforce it under §§ 3 and 4 . . . ."); *accord Boatman v. Houzz*

8    *Inc.*, No. 22-CV-00738-JSW, 2022 WL 1528171, at *3–4 (N.D. Cal. Apr. 7, 2022) (collecting

9    cases); *Capelli Enterprises, Inc. v. Fantastic Sams Salons Corp.*, No. 5:16-CV-03401-EJD, 2016

10   WL 4492588, at *4–5 (N.D. Cal. Aug. 26, 2016) (same).

11   Because the arbitrability of this dispute is itself a question for an arbitrator, it is neither

12   necessary nor appropriate for the Court to consider the parties' positions regarding the scope of the

13   arbitration agreements as they pertain to Plaintiff's claim for intentional interference with

14   prospective economic relations.

15   **B.     Motion to Strike**

16   Defendants argue that Plaintiff has included unnecessary and scandalous assertions in the

17   complaint.  *See* Dkt. No. 21 at 5–6, 15–16.  For example, Plaintiff alleges that Defendants were

18   "exploit[ing] a family member for financial gain."  *See* Compl. at ¶ 1.  Defendants ask the Court to

19   strike these allegations.  *Id.*

20   Federal Rule of Civil Procedure 12(f) provides that a court may strike "from any pleading

21   any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R.

22   Civ. P. 12(f).  "Motions to strike are regarded with disfavor because they are often used as

---

[1] *See* American Arbitration Association, http://www.adr.org/sites/default/files/CommercialRules_Web.pdf (last visited August 16, 2022).
[2] Although the Ninth Circuit in *Brennan* left open the question of whether its holding only applies to sophisticated parties and commercial contracts, it noted that "the vast majority of the circuits that hold that incorporation of the AAA rules constitutes clear and unmistakable evidence of the parties' intent do so without explicitly limiting that holding to sophisticated parties or to commercial contracts."  *Brennan*, 796 F.3d at 1130–31.  The Court need not explore this nuance here, because Plaintiff entered into a business agreement with Defendants, and does not argue that he was an unsophisticated party.

6

delaying tactics and because of the limited importance of pleadings in federal practice." *Z.A. ex rel. K.A. v. St. Helena Unified Sch. Dist.*, No. C 09-03557 JSW, 2010 WL 370333, at *2 (N.D. Cal. Jan. 25, 2010). "Where there is any doubt as to the relevance of the challenged allegations, courts generally err on the side permitting the allegations to stand . . . ." *See id.* (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds*, *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). This is particularly true when the moving party shows no prejudice and when striking the allegations will not streamline the ultimate resolution of the action. *Id.*

The Court understands that the parties have strong and divergent views about the facts in this case. However, mere disagreement is not enough to render allegations unnecessary or scandalous. Defendants no doubt disagree with Plaintiff's allegations, but they provide background information about the parties' professional relationships and the alleged conduct in this case. Additionally, because the case will proceed to arbitration, granting the motion to strike would not streamline this action at all. The Court therefore **DENIES** Defendants' motion on this basis.

### III. CONCLUSION

Accordingly, the Court **GRANTS** the motion to compel arbitration and **STAYS** the case pending completion of arbitration. The Court **DENIES** the motion to strike. The parties are further **DIRECTED** to file a joint status report regarding the status of the arbitration proceeding 120 days from the date of this order and every 120 days thereafter unless otherwise ordered. The Clerk is directed to administratively close this case.

**IT IS SO ORDERED.**

Dated: 8/17/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

7